UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NDGA ROME DIVISION

2017 NOV -3 AM 11:08

M. REGINA THOMAS
CLERK
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANTHONY WAYNE BARNETT JR. | § | CHAPTER 7 |
| LISA MARIE BARNETT | § | |
| | § | CASE NO. 17-41618-MGD |
| Debtors. | § | |
| | § | |
| | § | |
| CARLOS ALBERTO CAMACHO | § | |
| | § | ADVERSARY PROCEEDING |
| Plaintiff, | § | NO. 17-04030-Mgd |
| | § | |
| V. | § | |
| | § | |
| ANTHONY WAYNE BARNETT JR. | § | |
| LISA MARIR BARNETT | § | |
| | § | |
| Defendants. | § | |
| | § | |

## FIRST AMENDED COMPLAINT FOR WILLFUL AND MALICIOUS INJURY

## UNDER 11 U.S.C. §523(a)(6)

COMES NOW the Plaintiff, Carlos A Camacho "Plaintiff", files this First Amended Complaint, respectfully alleging and showing the Court the following and states:

1.

This is a core proceeding as defined by 28 U.S.C. §§157(b)(2)(I) and (J) of the United States Code and is brought pursuant to Chapter 7 Case No. 17-41618-MGD, now pending in this Court.

1

2.

Jurisdiction is proper pursuant to 28 U.S.C. §§157, 1334, and 11 U.S.C.§523(a)(6).

3.

Defendants may be served with summons and amended complaint through his attorney of record in the underlying Chapter 7 case, Defendants' Attorney, Rob Rickman, 1755 North Brown Rd, Suite 200, Lawrenceville, GA 30043 and at Defendants' home address 130 Piney Hill Rd., Chatsworth, GA 30705-6764.

## FACTUAL BACKGROUND

4.

On or about May 29, 2015, Defendants entered into a two-year residential lease agreement with Plaintiff for the property located at 114 Strain Rd., Cohutta, Georgia, 30710. A true and correct copy of the Contract is attached hereto as Exhibit "A."

5.

Defendants leased the property for two years with a rent of nine-hundred dollars ($900.00), payable at the Plaintiffs residence of 2812 Spicewood Ln, Ooltewah, TN 37363 no later than the 5th of each month.

6.

The Contract provides, among other things, that property would only be occupied by no more than five (5) persons, including children.

7.

Mrs. Rebecca McMillian was residing, and she signed an agreement with Santek Waste Services, listing herself as the owner of the property.

8.

The contract provided among other things that Defendants would not make any alterations or repairs to the property without authorization of Plaintiff.

2

9.

Defendants, without authorization of Plaintiff, built a wall across the living room, in fact splitting the living room into two (2) rooms.

10.

As of February 2017, Defendants were behind on their rent by $450.00, which is half of the agree monthly rental.

11.

As of February 17, 2017, Defendants had not paid the February rent.

12.

Before February 27, 2017, Defendants informed Plaintiff that they were leaving the property because they have bought a house.

13.

Before February 24, 2017. Defendants left the keys to the rental property at Plaintiff's office at 319 N. Selvidge St., Dalton, Georgia.

14.

On February 24, 2017, Plaintiff inspected the property for the first time after Defendants vacated the rental property.

15.

On February 24, 2017, after Plaintiff saw the damages caused by Defendants to the rental property, Plaintiff withdrew his authorization for Defendants to enter into the property.

16.

On February 24, 2017, Plaintiff secured the vacant property with a chain and new locks on the driveway gate.

17.

On February 27, 2017, Plaintiff filed a distress warrant application and a pre-warrant application in the Whitfield County Magistrate Court against the Defendants because Defendants had called law enforcement stating that Plaintiff was denying access to the property when in fact they had already surrendered the keys and vacated the empty premises.

3

18.

On February 27, 2017, after the warrants were filed, the Defendants gave authorization to a relative to break into the property and remove an abandoned non-working truck and also gave authorization for a leasing company to remove a shed that Defendants left behind.

19.

On February 28, 2017, Plaintiff was contacted by Mr. Gerald Vern Ledford. Mr. Ledford informed me that he was the owner of some cattle that was on the property. Mr. Ledford informed me that he was renting the property for pasture from the Defendants.

20.

The Defendants did not have Plaintiff's expressed permission to rent pasture nor to rent pasture to a third party.

21.

On June 6, 2017, the Whitfield County Magistrate Court entered a judgment in favor of Plaintiff in the amount of $7,750.00, which included compensation for criminal damage to the property beyond normal wear and tear and the willful and unauthorized removal of appliances, which included an electric stove and refrigerator. A true and correct copy of the Judgement is attached hereto as Exhibit "B".

22.

Upon filing their Chapter 7 Petition, the Defendants, filed a Declaration Concerning Debtor's Schedules, affirming the truth of the attached Schedules, under the penalty of perjury. A true and correct copy of the Declaration is attached hereto as Exhibit "C".

### FIRST CLAIM FOR RELIEF
### EXCEPTION TO DISCHARGE OF DEBT
### PURSUANT TO 11 U.S.C.A.§523(a)(6)

23.

Plaintiff incorporates by reference paragraphs 1-22 above as if fully restated herein.

24.

Plaintiff is allowed to bring this amended Complaint, as a creditor, pursuant to 11 U.S.C.§523(a)(6).

4

25.

The Defendants willfully destroyed the property by building a wall in the living room that diminished the overall aesthetics and value and left damage to the existing structure. Defendants left the carpet covered in dirt and animal feces, broken windows and screens, stealing the stove and refrigerator, tears in the vinyl flooring, mountains of trash left on the porch and property, removing the shower head in the bathroom, broke the locks on the gate and leaving the property beyond normal wear and tear resulting in $7,750.00 of damage.

26.

Defendants willfully and maliciously injured Plaintiff and his property.

27.

Defendants debt to Plaintiff is non-dischargeable under 11 U.S.C.§523(a)(6).

## SECOND CLAIM FOR RELIEF FOR
## ATTORNEY'S FEES - O.C.G.A. 13-6-11

28.

Plaintiff incorporates by reference paragraphs 1 through 27 above as if fully restated herein.

29.

Based on the acts referred to above, Defendants have acted in bad faith and caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. 13-6-11.

30.

This adversary complaint was necessitated by the actions and non-actions of the Defendants.

31.

As a result of the aforementioned conduct, attorneys' fees and costs should be held non-dischargeable in bankruptcy and should be excepted from discharge, after said discharge is revoked.

WHEREFORE, Plaintiff prays that:

a) A determination that Defendants shall be denied a discharge;

b) A determination that Defendants' debt to Plaintiff is non-dischargeable and is excepted from discharge;

c) Judgement in favor of Plaintiff in the amount of $7,750.00, plus all allowable interest, costs and attorneys' fees associated with this action;

d) That the Court determine any and all remaining issues and render judgement in favor of the Plaintiff and against Defendants; and

e) That Plaintiff have such other and further relief as this Court may deem just and proper.

Respectfully submitted this 1st day of November, 2017.

*(signature)*

Carlos A. Camacho. Plaintiff/Pro Se
2812 Spicewood Lane
Ooltewah, TN 37363
423-503-1714
carlos.camacho@cpa.com

## RESIDENTIAL LEASE AGREEMENT

**Anthony Wayne Barnett, Jr. and Lisa Marie Barnett** (hereinafter referred to as "Tenants") agrees to lease from Carlos A. Camacho (hereinafter referred to as "Landlord") a residential unit further described as 114 Strain Rd., Cohutta, Georgia 30710.

### Term:
The term of this Lease is for two (2) years, commencing on the 1st day of June, 2015 and expiring on the 31st day of May, 2017, unless renewed or extended pursuant to the terms herein.

### Payment of Rent:
Monthly rent is $900.00, payable in advance on the first day of each calendar month. Rent shall be made payable to Carlos A. Camacho and mailed or delivered to the following address:

2812 Spicewood Lane, Ooltewah, TN 37363.

Rent may be delivered personally between the hours of 9:00 a.m. and 8:00 p.m. on the following days: Saturday and Sundays if the rent is due on a weekend.

### Returned Check and Stop Payment:
In each instance that a check offered by Tenant to Landlord for any amount due under this Agreement or in payment of rent is returned for lack of sufficient funds, a "stop payment" or any other reason, a service charge of $35.00 will be assessed and other charges may be assessed for late payment.

### Late Charges:
If Tenant fails to pay the rent in full by the 5th day of each calendar month, Tenant will be assessed a late charge of $45.00. If the Tenant fails to pay the rent in full after the 5th day, then every day after the 5th of each month there will be an extra charge of $10.00 per day the payment is late. Landlord reserves and in no way waives the right to insist on payment of the rent in full on the date it is due.

**Default.** If Landlord determines that Tenant is in default of this Agreement, including but not limited to the failure to pay rent when due, as authorized under O.C.G.A. § 44-7-50, Landlord may immediately demand possession of the Premises. In such event, Landlord shall provide Tenant with a written Notice to Vacate, allowing Tenant thirty (30) days to vacate premises. Landlord may provide such notice by serving it personally on Tenant, or by leaving the same at the principal building on the Premises, or by posting the same conspicuously on the leased Premises. In addition, all unpaid rents payable during the remainder of this Agreement or any renewal period shall be accelerated without notice or demand. Tenant shall remain fully liable to the Landlord for:

(a) Any lost rent and any other financial obligation under this Agreement;

(b) Landlord's cost of reletting the Premises including but not limited to leasing fees, utility charges, and any other fees necessary to relet the Premises;

(c) Repairs to the Premises for Tenant's use that are beyond normal wear and tear;

(d) All of Landlord's costs associated with evicting Tenant, including but not limited to court costs, costs of service, prejudgment interest, and reasonable attorney's fees;

(e) All of Landlord's costs associated with collecting amounts due under this Agreement, including but not limited to debt collection fees, late charges, and returned check charges;

(f) And any other recovery to which Landlord is entitled by law or in equity. Landlord is obligated to make all reasonable efforts to mitigate any damage or loss resulting from Tenant's breach by attempting to relet the Premises to acceptable tenants and thereby reducing Tenant's liability.

**Tenant Examination and Acceptance of Premises:**
The Tenant acknowledges that he has examined the leased premises and his acceptance of this agreement is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein; and the Tenant agrees that no representations as to the condition of the premises have been made and that no agreement has been made to redecorate, repair or improve the premises unless hereinafter set forth specifically in writing. Landlord will supply to Tenant, in the manner required by law, if so required, any property and/or inspection checklists. The Landlord will deliver the leased premises and all common areas in a habitable condition, pursuant to applicable State law. Tenant takes premises in its AS-IS condition.

**Occupancy and Use:**
The premises are to be used only as a private residence for Tenant(s). The premises shall be occupied by no more than Five (5) persons, including children. The premises shall not be used for any purpose other than a private residence without the prior written consent of the Landlord.

**Security Deposit:**
Upon execution of this lease, Tenant will deposit with Landlord the sum of $1,600.00. The deposit will be paid in two installments. The 1st installment of $900.00 is due with the first month's rent and the 2nd installment will be due August 1, 2015. Landlord shall deposit said security deposit, supply applicable notifications and/or surety, utilize and upon termination of this Lease return to Tenant said security deposit according to applicable law. Said security deposit is to be held as collateral security and applied on

any rent or any other charge that may remain due and owing at the expiration of this agreement any extension thereof or holding over period for which Landlord is entitled to apply security deposits.

During the Term of this Lease or after its termination, the Landlord may charge the Tenant or make deductions from the Security Deposit for any or all of the following:

(a) Repair of walls due to plugs, large nails or any unreasonable number of holes in the walls including the repainting of such damaged walls;

(b) Repairing cuts, burns, or water damage to tile, linoleum, rugs, and other areas;

(c) Repainting required repairing the results of any other improper use or excessive damage by the Tenant;

(d) Repairs and replacement required where windows are left open which have caused plumbing to freeze, or rain or water damage to floors or walls; and

(e) Replacing damaged or missing doors, windows, screens, mirrors or light fixtures;

(f) Any other repairs or cleaning due to any damage beyond normal wear and tear caused or permitted by the Tenant or by any person whom the Tenant is responsible for;

(g) Unplugging toilets, sinks and drains;

(h) The cost of extermination where the Tenant or the Tenant's guests have brought or allowed insects into the Premises or building;

(i) Any other purpose allowed under this Lease or the Act.

For the purpose of this clause, the Landlord may charge the Tenant for professional cleaning and repairs if the Tenant has not made alternate arrangements with the Landlord. The Tenant may not use the Security Deposit as payment for the Rent.

**Insurance:**
Tenant is required to independently purchase renter's insurance to protect any and all of Tenant's personal property on the leased premises and/or in any common areas from any and all damages.

**Utilities:**
Tenant will be responsible and pay for the following utilities, including all required deposits (check those that apply):

[X] Gas [X] Water [X] Electric [X] Refuse Collection [X] Telephone [X] Cable TV
[X] Trash Collection

**Landlord will not be responsible any utilities or required deposits.**

Tenant shall be responsible for contacting and arranging for any utility service not provided by the Landlord, and for any utilities not listed above. Tenant shall be responsible for having same utilities disconnected on the day Tenant delivers the leased premises back unto Landlord upon termination or expiration of this Lease.

**Hazardous Materials.** Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

**Alterations and Repairs by Tenant:**
Tenant will not, without Landlord's prior written consent, alter, re-key or install any locks to the premises or install or alter any burglar alarm system, remodel or make any structural changes, alterations or additions to the premises (a reasonable number of picture hangers excepted).

**Maintenance and Repair Rules.** Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Tenant shall:

    (a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

    (b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

    (c) Not obstruct or cover the windows or doors;

    (d) Not leave windows or doors in an open position during any inclement weather;

    (e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

    (f) Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Landlord;

    (g) Keep all air conditioning filters clean and free from dirt;

    (h) Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were

constructed. Tenant shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant;

(i) And Tenant's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

(j) Keep all radios, television sets, stereos, phonographs, etc., turned down to a level of sound that does not annoy or interfere with other residents;

(k) Deposit all trash, garbage, rubbish or refuse in the locations provided therefore and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

(l) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them

**Damage to Premises.** In the event the Premises are destroyed or rendered wholly uninhabitable by fire, storm, earthquake, or other casualty not caused by the negligence of Tenant, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises, Tenant paying rentals up to such date and Landlord refunding rentals collected beyond such date. Should a portion of the Premises thereby be rendered uninhabitable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Landlord exercises its right to repair such uninhabitable portion, the rental shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full rent shall recommence and the Agreement continue according to its terms.

**Inspection of Premises.** Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Landlord for the preservation of the Premises or the building. Landlord and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, that do not conform to this Agreement or to any restrictions, rules or regulations affecting the Premises.

### Assignment of Agreement and Subletting:
Tenant will not sublet the premises or any portion thereof, or assign this Lease without the prior written consent of Landlord.

### Pets:
No pet, animal, bird or other pet will be kept inside the premises, even temporarily. If written permission is given by Landlord for pets, a separate agreement will be executed. Additional deposits, monthly fee and a non-refundable fee may apply.

### Smoking:
Smoking by any Tenant, family member, guest or invitee is not permitted in any interior or enclosed space on the premises, and Tenant's failure to observe this restriction shall be cause for forfeiture of the security deposit.

### Quiet Enjoyment:
Landlord agrees that Tenant, keeping and performing the covenants herein contained on the part of the Tenant to be kept and performed, shall at all times during the existence of this lease, renewals or extensions peaceably and quietly, have, hold, and enjoy the leased premises, without suit, trouble or hindrance from Landlord, or any person claiming under Landlord.

### Termination of Lease - Hold Over:
Either Landlord or Tenant may terminate this lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days written notice prior to the due date. Since *time is of the essence* in <u>all</u> matters of this Lease, and especially with respect to the issue of renewal, **if Tenant shall hold over after the expiration of the term of this Lease, Tenant shall, in the absence of any written agreement to the contrary, be a tenant from month to month, as defined by applicable law, at the monthly rate in effect during the last month of the expiring term plus $ 900.00,** the resultant rent being Landlord's present rental fee for month to month tenancies. All other terms and provisions of this Lease shall remain in full force and effect.

### Default / Breach By Tenant:
In the event of any default hereunder on the part of the Tenant, his family, servant, guests, invitees, or should the Tenant occupy the subject premises in violation of any lawful rule, regulation or ordinance issued or promulgated by the Landlord or any rental authority, then and in any of said events the Landlord shall have the right to terminate this lease by any and all methods allowed Landlord by law.
Should Tenant terminate this agreement prior to the expiration date, Tenant shall pay Landlord the sum of $5,400.00 or six months rent as liquidated damages for breach of this agreement and not as a penalty.

### Agents and Authority to Receive Legal Papers:
Any notice which either party may or is required to give, shall be in writing and may be given by mailing the same, by certified mail, and shall be deemed sufficiently served

upon Tenant if and when deposited in the mail addressed to the leased premises, or addressed to Tenant's last known post office address, or hand delivered, or placed in Tenant's mailbox to Tenant at the premises. If Tenant is more than one person, then notice to one shall be sufficient as notice to all. The Landlord, any person managing the premises and anyone designated by the Landlord as agent are authorized to accept service of process and receive other notices and demands, which may be delivered to:

[X] The Landlord/Owner, Carlos A. Camacho, at the following address:
2812 Spicewood Lane, Ooltewah, TN 37363
Telephone: 423-503-1417

**Abandonment.** If at any time during the term of this Agreement Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

**Attorney's Fees.** As provided under O.C.G.A. § 44-7-2(c), in the event any dispute arises between Landlord and Tenant that results in litigation concerning a breach of this Agreement, the losing party shall pay the prevailing party's reasonable attorney fees and costs, which shall be determined by the court and made a part of any judgment.
Recording of Agreement. Tenant shall not record this Agreement on the Public Records of any public office. In the event that Tenant shall record this Agreement, this Agreement shall, at Landlord's option, terminate immediately and Landlord shall be entitled to all rights and remedies that it has at law or in equity.
Governing Law. This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Georgia.
Severability. If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**Binding Effect.** The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

**Descriptive Headings.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

**Construction.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

**Non-Waiver.** No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

**Modification.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

**Tenants acknowledges receipt of an executed copy of this Lease.**

Notice to Tenants: As stated in this Lease, if you hold over after the expiration of the term of this Lease, you shall, in the absence of any written agreement to the contrary, be a tenant from month to month at the monthly rate in effect during the last month of the expiring term plus $ 900.00.

Tenant's signature: _____  Date: 5-29-15
Anthony Wayne Barnett, Jr.

Tenant's signature: _____  Date: 5/29/15
Lisa Marie Barnett

Landlord/Agent's signature: _____  Date: 5/29/15
Carlos A. Camacho

## ATTACHMENT TO LEASE AGREEMENT

Landlord and Tenants agree that any additions to the property will be approved prior to remodeling by submitting written documentation and estimate of costs of materials. Once the Landlord has approved said additions and costs of materials, Tenants will be responsible for costs and labor of the construction. Landlord will not be responsible for any injury or damage to the additions during construction.

Landlord and Tenants agree that once the 2 year lease agreement has terminated, Tenants may offer to buy the property and the costs of the approved materials (only materials costs) shall be applied towards the down payment of the purchase. It will be Tenants responsibility to submit a written offer for the purchase of the house and have an approved loan letter from any bank that they choose. Tenants will not be under any obligation to purchase the property nor will the Landlord be under any obligation to sell the property. If no purchase agreement is entered, none of the costs will be refunded to the Tenants.

Tenant's signature: _[signature]_  Date: 5-29-15
Anthony Wayne Barnett, Jr.

Tenant's signature: _[signature]_  Date: 5/29/15
Lisa Marie Barnett

Landlord/Agent's signature: _[signature]_  Date: 5/29/15
Carlos A. Camacho

IN THE MAGISTRATE COURT FOR THE COUNTY OF WHITFIELD

STATE OF GEORGIA

CAMACHO, CARLOS
2812 SPICEWOOD LN
OOLTEWAH TN 37363-
HOME: (423) 503-1417,
PLAINTIFF

CASE NO: 2017-233646DW

VS

BARNETT JR, ANTHONY
114 STRAIN RD
COHUTTA GA 30710-,

BARNETT, LISA MARIE
114 STRAIN RD
COHUTTA GA 30710-,
DEFENDANT

### ORDER

The above styled matter having come on regular for trial before me, and it appearing the Defendant is subject to the jurisdiction of this Court, and evidence having been heard and considered, then;

IT IS HEREBY ORDERED that Plaintiff shall have judgment in the amount of $7,750.00 and cost of $47.00, and other future cost plus interest as provided by law.

IT IS FURTHER ORDERED that should said case be appealed by the defendant(s), the defendant(s) shall be required to pay into the registry of the court all sums found by the court to be due for rent in order to remain in possession of the premises. The tenant shall also be required to pay all future rent into the registry of the court, as it becomes due.

This, the 6th day of June, 2017.

JUDGE, MAGISTRATE COURT

DATE 6-6-17

Exhibit C

Debtor 1
Debtor 2  **Barnett,, Anthony Wayne Jr. & Barnett, Lisa Marie**    Case number (if known) _____

---

| 4.2 | **Capital One / Maurices** | Last 4 digits of account number  **0838** | **$439.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**PO Box 30258**
**Salt Lake City, UT 84130-0258**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify _____

---

| 4.3 | **Carlos Camacho** | Last 4 digits of account number  **8999** | **$0.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**2812 Spicewood Ln**
**Ooltewah, TN 37363-8950**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify _____

---

| 4.4 | **Credit Management LP** | Last 4 digits of account number  **0838** | **$208.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**4200 International Pkwy**
**Carrollton, TX 75007-1912**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim is for a community debt

Is the claim subject to offset?
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify _____

---

Debtor 1
Debtor 2 **Barnett,, Anthony Wayne Jr. & Barnett, Lisa Marie**                Case number (if known) _____

| 4.2 | **Capital One / Maurices** | Last 4 digits of account number **0838** | **$439.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**PO Box 30258**
**Salt Lake City, UT 84130-0258**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

☐ Debtor 1 only                  ☐ Contingent
☐ Debtor 2 only                  ☐ Unliquidated
■ Debtor 1 and Debtor 2 only     ☐ Disputed
☐ At least one of the debtors and another    Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a community     ☐ Student loans
debt                             ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                 report as priority claims
■ No                             ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                            ■ Other. Specify _____

| 4.3 | **Carlos Camacho** | Last 4 digits of account number **8999** | **$0.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**2812 Spicewood Ln**
**Ooltewah, TN 37363-8950**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

☐ Debtor 1 only                  ☐ Contingent
☐ Debtor 2 only                  ☐ Unliquidated
■ Debtor 1 and Debtor 2 only     ☐ Disputed
☐ At least one of the debtors and another    Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a community     ☐ Student loans
debt                             ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                 report as priority claims
■ No                             ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                            ■ Other. Specify _____

| 4.4 | **Credit Management LP** | Last 4 digits of account number **0838** | **$208.00** |

Nonpriority Creditor's Name

When was the debt incurred?

**4200 International Pkwy**
**Carrollton, TX 75007-1912**
Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

■ Debtor 1 only                  ☐ Contingent
☐ Debtor 2 only                  ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only     ☐ Disputed
☐ At least one of the debtors and another    Type of NONPRIORITY unsecured claim:
☐ Check if this claim is for a community     ☐ Student loans
debt                             ☐ Obligations arising out of a separation agreement or divorce that you did not
Is the claim subject to offset?                 report as priority claims
■ No                             ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes                            ■ Other. Specify _____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
ROME DIVISION

2017 NOV -3  AM 11: 08

M. REGINA THOMAS

BY_____
DEPUTY CLERK

| | |
|---|---|
| IN RE: | BK CASE NO.: 17-41618-MGD |
| ANTHONY WAYNE BARNETT, JR. | CHAPTER 7 |
| LISA MARIE BARNETT, | |
| DEBTORS. | |
| CARLOS A. CAMACHO | |
| PLAINTIFF. | ADV. PROC. NO.17-04030-MGD |
| V. | |
| ANTHONY WAYNE BARNETT, JR. | |
| LISA MARIE BARNETT, | |
| DEFENDANTS. | |

**CERTIFICATE OF SERVICE**

This is to certify that on November 3, 2017 I served a copy of the **First Amended Complaint,** filed on November 3, 2017 on the following parties in a properly addressed envelope with adequate postage affixed hereto:

**Office of the United States Trustee**
362 Richard Russell Building
75 Spring Street, SW
Atlanta, GA 30303

**Tracey L. Montz, Trustee**
Suite 108 #406
2146 Roswell Rd.
Marietta, GA 30062

**Rob Rickman. Esq.**
Attorney for Debtors
1755 North Brown Rd. Suite 200
Lawrenceville, GA 30043

**Anthony Wayne Barnett, Jr.**
**Lisa Marie Barnett**
130 Piney Hill Rd.
Chatsworth, GA 30705-6764


This 2nd day of November, 2017.

/s/ *Carlos A. Camacho*  w/ expressed permission
Carlos A. Camacho, Pro Se
2812 Spicewood Lane
Ooltewah, TN 37363
423-503-1417
ccamacho@ccaso.com